IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

IN RE: MARK ANTHONY EALY, SR.,            No. 4:05-BK-10181
    Debtor                                                            Ch. 13

**MEMORANDUM OPINION**

      Before the court is the Motion to Modify Stay to Permit Setoff of Tax Overpayment [the Motion] filed by the Internal Revenue Service [IRS] on May 21, 2008. A hearing was held on June 18, 2008. The parties appeared through their attorneys; the debtor also appeared. The IRS alleges that it has a right to set off mutual postpetition obligations and seeks to offset the debtor's tax overpayment for tax year 2007 in the amount of $936 against his 2005 tax liability in the amount of $3,375. At the hearing, the IRS moved to also offset the debtor's economic stimulus payment of $600 against his 2005 tax liability.[1] In response, the debtor argues that: (1) the IRS does not have the right to offset the debtor's postpetition earnings; (2) relief from the automatic stay is precluded by the debtor's confirmed plan; and (3) the IRS is adequately protected. At the conclusion of the hearing, the court gave the parties an opportunity to brief the issues and took the matter under advisement. For the reasons stated below, the relief requested by the IRS is denied.

**I. Jurisdiction**

      This court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G). The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052,

---

      [1]The $600 amount was not available at the time the IRS filed its Motion.

made applicable to the proceeding under Federal Rule of Bankruptcy Procedure 9014.

## II. Background

On January 6, 2005, the debtor filed his pre-BAPCPA Chapter 13 voluntary petition and Chapter 13 plan. The plan provided for an IRS priority claim of $1,928. On January 31, 2005, the IRS filed a proof of claim, reflecting a priority claim for the debtor's tax liabilities for 2002–2004 in the amount of $3,510.82 and a general unsecured claim of $34.47. On February 24, 2005, this court entered an order confirming the debtor's Chapter 13 plan. The order states that "[t]he total amount of an allowed claim shall be the amount stated on a proof of claim filed by or on behalf of such creditor, unless the Court determines a different amount following the filing of an objection to claim." This court entered an order on July 7, 2005 that, inter alia, deemed as "allowed" the IRS's claims.

The debtor modified his Chapter 13 plan on January 23, 2006, to provide for the IRS's priority claim in the amount of $3,511.00 to be paid in full, pro rata. This modification of the debtor's plan was never confirmed. Thereafter, the debtor made several other modifications to his plan, but these modifications made no reference to the IRS.[2] On October 25, 2006, this court issued an order confirming the last modification of the debtor's plan.

The debtor did not pay his postpetition federal income tax for 2005 and 2006. On June 6, 2007, the IRS filed a proof of claim reflecting a priority claim of $7,298.00 and a general unsecured claim of $476.41. The priority claim included the debtor's tax liability for prepetition years

---

[2]On February 4, 2006, the debtor modified his plan, and this court entered an order confirming the modified plan on March 2, 2006. On August 1, 2006, the debtor modified his plan, and this court entered an order confirming the modified plan on August 28, 2006. On September 19, 2006, the debtor modified his plan, and this court entered an order confirming the modified plan on October 25, 2006.

2002–2004 and his postpetition tax liability of $3,375.00 for 2005 and $1,499.00 for 2006. On June 20, 2007, the Chapter 13 trustee filed a "Summary Notice of Amended Claim Filed" [Notice]. The Notice stated, in relevant part:

> Pursuant to 11 U.S.C. Sections 501 and 502 and Federal Rule of Bankruptcy Procedure 3007, a claim or interest for which a proof of claim is filed is deemed allowed unless the Debtor or a party in interest objects to the claim and obtains an order modifying or disallowing the claim as filed. If no order is entered which modifies or disallows a claim, each of the claims noted below will be paid as filed, subject to the terms of the confirmed plan and the United States Bankruptcy Code.

The Notice listed the IRS's original claim amount as $3,510.82 and its amended claim amount as $7,298.08. The debtor did not modify his plan after the trustee filed the Notice. The trustee's records show that: (1) the IRS's priority claim is $7,298.08; (2) $3,209.96 of that claim has been paid; and (3) $4,088.12 is still owed on the claim. The debtor is current on his plan payments.

In 2008, the debtor filed his income tax return for 2007, reflecting an overpayment of $936.00. On May 21, 2008, the IRS filed its Motion. Five days later, the IRS credited the debtor's 2007 account for $600 in accordance with the Economic Stimulus Act of 2008.[3]

### III. Discussion

In support of its Motion,[4] the IRS argues that it has a right to set off mutual postpetition obligations, thereby permitting it to offset the debtor's tax overpayment for tax year 2007 in the

---

[3] In "Debtor's Brief Opposing Set Off of Postpetition Earnings and Economic Stimulus Payment," the debtor argues that the IRS violated the automatic stay by freezing the debtor's 2007 tax refund and economic stimulus payment without notice to the debtor and without seeking approval of this court. There is no motion pending before this court for contempt or for violation of the automatic stay. Accordingly, this court will not address the allegations.

[4] Because the IRS chose to assert its right to setoff by filing a motion for relief from the automatic stay, this court will not address whether the debtor's tax overpayment is property of the bankruptcy estate.

3

amount of $936 and his economic stimulus payment of $600 against his 2005 tax liability in the amount of $3,375. The IRS also contends that the debtor's confirmed plan does not prevent it from offsetting the debtor's postpetition tax overpayment because: (1) it had no way of knowing when it filed its claim that the debtor would have a postpetition overpayment and (2) at the time the debtor's plan was confirmed, there was no tax overpayment. In response, the debtor asserts that the IRS does not have the right of setoff against his postpetition earnings, as the Bankruptcy Code's [the Code] provision on setoff, 11 U.S.C. § 553, only covers the setoff of mutual prepetition obligations. Additionally, the debtor maintains that relief from the automatic stay is precluded by the debtor fully funding his confirmed plan that provides for full payment to the IRS.

### A. Right of Postpetition Setoff

Although no federal right of setoff is created under the Code, "any right of setoff that a creditor possessed prior to the debtor's filing for bankruptcy is not affected by the Bankruptcy Code." *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 20 (1995). In turn, § 6402(a) of 26 U.S.C. authorizes the IRS to offset a taxpayer's overpayment against any outstanding tax liabilities. 26 U.S.C. 6402(a) ("In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall…refund any balance to such person."). The Code expressly allows for *prepetition* setoff. Section 553(a) of 11 U.S.C. states:

> Except as otherwise provided in this section and sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case….

Notably absent from the Code is an express provision providing for postpetition setoff. "Although this silence has created some confusion, the general rule is that, subject to the restriction imposed by section 362, a postpetition claim may be offset against a postpetition debt so long as the claim and debt constitute valid, mutual obligations." 5 Collier on Bankruptcy §553.03[6], at 553–56 (15th ed. rev. 2004) (citing *In re Alfar Dairy, Inc.*, 458 F.2d 1258, 1262 (5th Cir. 1972) (holding that creditor's postpetition damage claim for its increased cost incurred in replacing dairy products not delivered by debtor could be offset against debtor's postpetition claim for nonpayment of diary products delivered postpetition after termination by creditor of prepetition contract); *In re Apex Int'l Mgmt. Servs., Inc.*, 155 B.R. 591, 594–95 (Bankr. M.D. Fla. 1993); *In re Mohawk Indus., Inc.*, 82 B.R. 174, 178–79 (Bankr. D. Mass. 1987); *In re J.A.G., Inc.*, 7 B.R. 624, 628 (Bankr. D. Mass. 1980); *In re Shoppers Paradise*, 8 B.R. 271, 277 (Bankr. S.D. N.Y. 1980)). The majority of courts follow this general rule because nothing in the Code "abrogates the common law right to setoff; thus, bankruptcy courts have recognized the right to setoff for postpetition debts." *In re Gordon Sel-Way*, 239 B.R. 741, 750–51 (E.D. Mich. 1999) (citing *United States v. Maxwell*, 157 F.3d 1099, 1102 (7th Cir. 1998); *Alfar*, 458 F.2d at 1262; *Matter of Fordson Eng'g Corp.*, 25 B.R. 506, 511 (Bankr. E.D. Mich. 1982); *J.A.G.*, 7 B.R. at 628).

In the present case, the IRS has a statutory right of setoff under § 6402(a). This court agrees with the majority view that the Code does not abrogate a creditor's common law right of setoff for mutual postpetition obligations.[5] But this court's recognition of the IRS's right to set off mutual postpetition obligations does not end the inquiry, as this court issued an order confirming the

---

[5]The debtor has not asserted that, presuming a right of setoff exists, the government has failed to prove the elements necessary to establish a right of setoff.

5

debtor's plan on February 24, 2005, which specifically states that "[t]he total amount of an allowed claim shall be the amount stated on a proof of claim filed by or on behalf of such creditor, unless the Court determines a different amount following the filing of an objection to claim." The confirmed plan proposes to pay the IRS in full, and the debtor is current in his plan payments.[6] Therefore, the issue is whether the debtor's confirmed plan prevents the IRS from exercising its right of setoff.

### B. Effect of Plan Confirmation on Right of Setoff

Courts frequently discuss the effect of confirmation on a creditor's right of setoff pursuant to § 553. Courts are divided as to whether confirmation of a plan under §§ 1141 or 1327 prevents the creditor from offsetting its claim under § 553. *In re Ronnie Dowdy, Inc.*, 314 B.R. 182, 187 (Bankr. E.D. Ark. 2004). Some courts have held that § 553 "trumps or conflicts with the plan confirmation provisions of Chapters 11 and 13, and these courts have granted post-confirmation setoffs." *Id*. (citing *In re De Laurentiis Entm't Group, Inc.,* 963 F.2d 1269, 1276–77 (9th Cir. 1992) (reasoning that §§ 553 and 1141 are in conflict and giving priority to setoff provision of § 553); *United States v. Munson,* 248 B.R. 343, 346–47 (C.D. Ill. 2000) (stating that IRS did not lose its right to set off prepetition income tax refund payable to debtor against debtor's prepetition tax liability from another tax year, despite IRS's failure to object to debtor's reorganization plan because giving precedence to Chapter 13 confirmation provision "would ignore and render meaningless the plain language of § 553"); *In re Womack,* 188 B.R. 259, 262 (Bankr. E.D. Ark. 1995) (citations omitted) (holding that, based on plain language of § 553, confirmation of Chapter 13 plan providing

---

[6]The IRS elected to file an amended proof of claim. Under the terms of the confirmation order, as effectuated by a procedure employed by the Chapter 13 trustee, the plan contemplates paying the amended IRS claim in full. Accordingly, this court will not speculate as to what the outcome of this case would be had the IRS elected not to file an amended claim for postpetition taxes.

for full payment of IRS debt did not preclude IRS from setting off refund against prepetition tax debt)).

In contrast, other courts have concluded "that the plan confirmation provisions take precedence and have denied setoff post-confirmation." *Id.* (citing *In re Cont'l Airlines*, 134 F.3d 536, 541 (3d Cir.1998) (finding unpersuasive the government's argument that § 1141 may be disregarded when setoff is asserted postconfirmation and holding that failure by creditor to exercise right of setoff before confirmation extinguishes that right); *In re Lykes Bros. S.S. Co.,* 217 B.R. 304, 310 (Bankr. M.D. Fla. 1997) (concluding that §§ 553 and 1141 are in conflict and that the provisions of § 1141 take precedence); *United States v. Driggs,* 185 B.R. 214, 215 (D. Md. 1995) (stating that "§§ 533 and 1141] are in irreconcilable conflict" and upholding bankruptcy court's determination that § 1141 takes priority over setoff provision of § 553)).

Prior decisions in the United States Bankruptcy Court for the Eastern and Western Districts of Arkansas have uniformly adopted the former view that confirmation of a plan does not affect a creditor's *prepetition* setoff rights. *See, e.g.*, *Dowdy*, 314 B.R. at 188 (holding that the language of § 553 indicating that, with certain specifically enumerated exceptions, the provisions of the Code would not affect any right that creditors otherwise had to set off mutual debts, trumped section of the Code providing for the binding effect of confirmed chapter 11 plan and prevented debtor from successfully asserting that, simply because its confirmed plan did not recognize right of setoff in the IRS, the IRS had no postconfirmation right to setoff against tax refund owing to debtor); *Womack*, 188 B.R. at 262 (holding that the fact that Chapter 13 plan providing for full payment of IRS debt had been confirmed did not preclude IRS from setting off refund against prepetition tax debt); *In re Tillery*, 179 B.R. 576, 578 (Bankr. W.D. Ark. 1995) (same); *In re Warwick*, 179 B.R. 582, 584–85

(Bankr. W.D. Ark. 1995) (same). Significantly, these decisions are based on the "unequivocal language" of § 553, which states

> "Except as otherwise provided in this section and in sections 362 and 363 of this title, *this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case ....*"

*Womack*, 188 B.R. at 262 (quoting 11 U.S.C. § 553) (emphasis added). "'This title' necessarily includes section 1327 which establishes the effect of confirmation." *Id*. Thus, the plain language of § 553 only prevents a creditor's *prepetition* right of setoff from being affected by the confirmation of a plan.

In the present case, this court acknowledges that nothing in the Code expressly abrogates the IRS's right to set off mutual postpetition obligations. But neither does any provision in the Code prevent such a right from being trumped by § 1327, as is the case with *prepetition* obligations under § 553. Lacking "unequivocal language" in the Code declaring that confirmation of a plan does not affect a creditor's *postpetition* setoff rights, this court holds that § 1327 takes precedence and that the IRS is therefore unable to exercise its postpetition right of setoff absent a sufficient basis for a postconfirmation lifting of the automatic stay.

### C. Lifting of the Automatic Stay

Courts generally recognize that, by establishing a right of setoff, the creditor has established a prima facie showing of "cause" for relief from the automatic stay under § 362(d)(1). *In re Nuclear Imaging Sys., Inc.*, 260 B.R. 724, 730 (Bankr. E.D. Penn. 2000) (citing *In re Orlinski*, 140 B.R. 600, 603 (Bankr. S.D. Ga. 1991); *In re Coleman*, 52 B.R. 1, 3 (Bankr. S.D. Ohio 1985); *In re Flanagan Bros., Inc.*, 47 B.R. 299, 303 (Bankr. D. N.J. 1985)). Once the creditor establishes its right of setoff,

the burden then shifts to the debtor to rebut the prima facie showing. *In re Firestone*, 179 B.R. 148, 148 (Bankr. D. Neb. 1995); *Nuclear*, 260 B.R. at 730; *In re Olson*, 175 B.R. 30, 33 (Bankr. D. Neb. 1994); *In re Whitaker*, 173 B.R. 359, 362 (Bankr. S.D. Ohio 1994). The debtor could meet this burden "by demonstrating that the interests of the movant seeking setoff are adequately protected." *Nuclear*, 260 B.R. at 730; *see also Olson*, 175 B.R. at 33 ("Once a creditor establishes that it has cause for relief, the burden shifts to the debtor to show that it will provide adequate protection."). The debtor may also rebut the creditor's cause for relief from stay by establishing that relief "would be unwarranted or inequitable" or by showing "that granting relief from stay would herein impede [the debtor's] fresh start, jeopardize [the debtor's] plan of reorganization, prejudice other creditors or cause other harm." *Whitaker*, 173 B.R. at 362.

In this instance, this court does not find sufficient justification under 11 U.S.C. § 362(d) to modify the automatic stay to permit setoff of the tax overpayment. The debtor has clearly met his burden of rebutting the prima facie showing of "cause" for relief from the automatic stay. The IRS is treated as a fully secured creditor under the debtor's confirmed plan. The debtor is making his payments timely; in fact, he is slightly ahead in his payments to the trustee's office. There is no evidence that the payment stream might be discontinued, altered, or adversely impacted in the near future, or that the IRS is inadequately protected under the confirmed plan. Additionally, the debtor has adequately demonstrated his need for the refund and the economic stimulus payment, both of which will help him in providing for his family and in fully complying with the terms of his confirmed plan.

### D. Equitable Considerations

The IRS cites authority suggesting that this court may use equity to allow the IRS to exercise

9

its right of postpetition setoff after confirmation of the plan. *See In re Murry*, 15 B.R. 325, 326 (Bankr. Ark. 1981). In *Murry*, the court discussed equitable considerations in a *prepetition* right-of-setoff case, stating:

> Not only is the Government's right of [prepetition] setoff supported by statute, but it is also the equitable solution in this situation. Any refund made to the plaintiff at this point would be a windfall to her. The plan proposed by the debtor-plaintiff in this proceeding is based upon the net income which she has at her disposal during the course of the year. Amounts which are deducted from her gross income are not taken account of because it is assumed they are being used to cover current expenses. If, as in this case, the debtor's current tax liabilities are less than the amounts withheld from her wages, then the excess should be available to her creditors under the plan. If the 1980 overpayment is simply refunded to the debtor-plaintiff herein, she will receive a cash windfall with no additional obligation to her creditors other than to continue with her payments under the plan. It is clearly a fairer solution to allow the United States to retain the overpayment against its claim in the bankruptcy proceeding.

*Id.* at 326; *see also Womack*, 188 B.R. at 262 (same); *Warwick*, 179 B.R. at 585 (same); *Tillery*, 179 B.R. at 578–79 (same).

In essence, the IRS's position is that if equity permits setoff of prepetition debts postconfirmation, then equity should also permit postconfirmation setoff of postpetition debts. But this court: (1) is persuaded that the discussion of equitable considerations in *Murry* was unnecessary, given that § 553 adequately at law addresses setoffs of *prepetition* indebtedness; (2) has ruled above that the plan governs as to setoffs regarding postpetition debts; and (3) is equally persuaded that equitable considerations do not automatically favor allowing setoff in any circumstance, but particularly under the facts of this case.

Assuming arguendo that the refund amount is property of the estate—an issue not reached by this court—the analysis in *Murry* ignores the fundamental conditions and assumptions underlying the formulation of a plan leading to its confirmation. Specifically, a plan payment is not " based

upon the net income which [the debtor] has at [his or her] disposal *during* the course of a year." *Murry*, 15 B.R. at 326. Rather, a *projected* disposable income determination turns on a preconfirmation analysis (either pre- or post BAPCPA) that results in a fixed net figure which the debtor in turn dedicates to his creditors on a monthly basis over the life of the then confirmed plan. While a postconfirmation tax refund might arguably be property of the estate, nothing in the Code or the confirmed plan conclusively dictates that the postconfirmation refund is automatically included, on an ad hoc postconfirmation basis, as projected disposable income that must be distributed under a confirmed plan.

While unofficial procedures may have arisen in the context of Chapter 13 trustees administering postpetition tax refunds, this record does not indicate that either the trustee or a creditor attempted to claim the refund for the estate or filed an objection to confirmation of the plan, seeking to: (1) preserve any future setoff right to the IRS for postpetition mutual obligations; (2) contractually include, either partially or fully, any subsequent tax refund as an amount that would be distributed to creditors under the plan; or (3) convert the refund—arguably personal property of the estate received postconfirmation—into an amount that should be distributed to creditors as part of a belated pre-confirmation best-interests-of-creditors-test analysis. While the IRS argues that proactive steps either at confirmation or in the context of filing its claim were unavailing because, at each pertinent time, no refund was due and owing, this court can discern no reason to equitably compel what could have easily been anticipated, negotiated, resolved, and contractually addressed by the parties either at confirmation of the original three to five year plan or upon modification. The IRS chose to raise the setoff issue in the context of a motion to lift stay; it was simply unsuccessful based upon the analysis set forth above.

Further, the "windfall" analysis in *Murry* is shortsighted and one-sided. It presupposes that, during the course of a three to five year plan, the debtor's expenses will remain level and that he or she will not be subjected to any increased living expenses or unforeseen adverse financial circumstances. The plan at confirmation is subject to negotiation based upon code sections that expressly contemplate a threshold best-interests-of-creditors test concerning personal property and a projected disposable income calculation based on current figures, which do not always anticipate or contemplate future adverse changes. Allowing the debtor to keep a subsequent tax refund is no less equitable than ignoring that, as the evidence in this case reflects, the debtor has, postconfirmation, struggled with increased transportation, living, and educational responsibilities and costs, while continuing to honor his plan payment commitment.

In this instance, the plan as confirmed does not address any subsequent refund issues, nor has a modification been proposed. The IRS is adequately protected and insufficient grounds exist for terminating or lifting the automatic stay, and, if equity applies, the equities in this instance lie with the debtor.

### IV. Conclusion

For the reasons stated above, the IRS's Motion is denied. The IRS is directed to return the refund and economic stimulus payment to the debtor.


IT IS SO ORDERED.


August 11, 2008
DATE

RICHARD D. TAYLOR
U.S. Bankruptcy Judge

cc:    Jack Dickerson
       Stacey McCord
       Jack Gooding